TRUSTEES OF TRINITY METHODIST EPISCOPAL CHURCH OF NORWICH *vs.* GEORGE W. HARRIS.

Second Judicial District, Norwich, May Term, 1900.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The decisions of the highest ecclesiastical tribunals in matters of ecclesiastical discipline, law and practice, are binding upon the civil courts in so far as they are applicable to causes pending therein.

An equitable right or title to land conveyed to certain persons as trustees of church *A* "and their successors in office," passes to the duly elected trustees of church *B*, when the former church has been merged in or consolidated with the latter pursuant to the rules,

usages and practice of the ecclesiastical denomination to which such bodies belong.

Argued June 1st—decided October 4th, 1900.

SUIT to determine the validity of a mortgage of real estate claimed to constitute a cloud upon the plaintiffs' title, and for other equitable relief, brought to the Superior Court in New London County and tried to the court, *Thayer, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiffs for alleged errors in the rulings of the court. *Error, judgment set aside and case remanded.*

The plaintiffs are trustees and members of the Trinity Methodist Episcopal Church, a corporation in Norwich organized and existing under the statute laws of this State relating to trustees of Methodist Episcopal churches. They claim in their complaint, by way of equitable relief: " 1. A decree that the defendant execute and deliver to the trustees of said Trinity Methodist Episcopal Church a sufficient deed releasing to them and their successors in office all the defendant's right, title and interest in said property under said mortgage and assignments ; or (2) that the court by its judgment set aside said mortgage and declare it void. 3. If the court finds anything to be due on said mortgage to the defendant, a judgment that said trustees be allowed to redeem said mortgage upon paying the defendant the amount due thereon, and that upon such payment the defendant execute a proper release deed of said premises. 4. Two thousand dollars damages."

The facts material to the questions decided are these : " 1. On the 8th day of April, 1895, and for more then twenty-five years prior thereto, the East Main Street Episcopal Church, the Central Methodist Episcopal Church and the Sachem Street Methodist Episcopal Church, named in the complaint, were local religious societies or churches in the town of Norwich, and members of the Methodist Episcopal Church; the Sachem Street Church being an incorporated society, the other two unincorporated societies. These churches when hereinafter mentioned will be called East Main Street,

Central and Sachem Street churches. 2. There were also two other Methodist Episcopal societies or churches in said town at that date, members of the Methodist Episcopal Church. 3. Each of said societies was a 'united society,' and such society is called, in the '*Discipline*' hereinafter referred to, sometimes a church, sometimes a charge, and sometimes a society ; and is described in paragraph 27 of the '*Discipline*,' (edition of 1892). 4. Said societies, like all united societies constituting the Methodist Episcopal Church of the United States, had been and were subject to the discipline, rules, regulations and usages of the Methodist Episcopal Church. . . . 7. For a considerable time prior to April 8th, 1895, the quarterly conference of each of said three churches had the question of their consolidation under consideration. . . . 10. The three societies or churches named in the first paragraph were on said day, and for many years had been, within the territorial limits of the New England Southern Annual Conference of the Methodist Episcopal Church, and belonged to said conference. 11. At the meeting of said Annual Conference held at Providence in 1895, Rev. John M. Walden, a bishop of the Methodist Episcopal Church, presiding at said Annual Conference, on said 8th day of April, 1895, in fixing the appointments of preachers for the ensuing year, appointed no preacher to either of the churches named in paragraph 1, but appointed Rev. J. L. Pitner to 'Trinity' Methodist Episcopal Church of Norwich. He also appointed a preacher for each of the two churches named in paragraph 2. . . . 13. It was the purpose of the bishop in thus dropping said three churches from the list of churches to which appointments were made, and in neglecting to appoint preachers to these churches, and in appointing Mr. Pitner as a preacher to 'Trinity,' to cause the three old societies 'to cease to exist,' and to unite the members thereof in a new society with the name 'Trinity Methodist Episcopal Church of Norwich.' 14. He did this solely under a power he assumed that he possessed as bishop, under § 3, paragraph 170 of the *Discipline* (edition of 1892), upon the construction which he and other bishops placed upon it, namely : that

the power to fix the appointments of preachers gave a bishop the power to end the existence of a society by intentionally neglecting to appoint a preacher to it, and gave him the power to unite two or more societies into one consolidated society by appointing one preacher to two or more societies, and that ' the act of appointment is the act of consolidation complete.' . . . 16. Other bishops of the Methodist Episcopal Church have placed the same construction upon said paragraph 170 as that given it by Bishop Walden, and societies have in the past on many occasions been so united. . . . 18. The defendant, who was then a member of said Central Church, and other members of said church knew of said act of Bishop Walden and the claimed effect thereof. 19. After the said action of Bishop Walden the larger part of the members of the three churches acquiesced and proceeded as if their membership had been changed from the church to which they had formerly belonged to a new church by the name of ' Trinity ;' trustees were at once appointed and afterwards elected by Trinity Church and have been regularly elected as provided by statute, the board at the commencement of this action being as stated in the writ. . . . 23. The trustees of said Central Church refused to transfer the title to the church property held by them to the trustees of Trinity Church, but have permitted its use by the pastor and members of Trinity Church for religious purposes according to the discipline, rules, etc., of the Methodist Episcopal Church ; and it has been so used by them. . . . 25. A portion of the property held by the trustees of the Central Church consisted of the real estate in question in the present action, which they then held subject to a mortgage indebtedness of $525, to the Norwich Savings Society. . . . 33. Said debt and mortgage were afterwards assigned to the defendant, who now owns the same. . . . 37. On August 30th, 1897, Bishop Walden executed a certificate,* which was recorded in the land rec-

---

*Know all men by these presents: That I, John M. Walden, of the city of Cincinnati, State of Ohio, by virtue of the power vested in me as Bishop of the Methodist Episcopal Church, while in charge of the New England Southern Annual Conference of said Methodist Episcopal

Trustees of Trinity M. E. Church v. Harris.

ords of the town of Norwich on August 9th, 1899. 39. If the effect of Bishop Walden's act of April 8th was to end the existence of the three churches and unite the members thereof in a new church by the name of Trinity, the plaintiffs Calvin L. Harwood, Costello Lippitt and Allen S. Barbour are, and, when this action was begun, were, members of said Trinity Methodist Episcopal Church; and there are also about 570 other members thereof. Said Harwood and Lippitt were until April 8th, 1895, members of the East Main Street Church and said Barbour was a member of the Central Church. None of said persons have united with said

---

Church at its fifty-fifth session held at the city of Providence, in the State of Rhode Island, from the 3d to the 8th day of April, both inclusive, in the year 1895, did at said session on the 8th day of April, 1895, in accordance with the usage, rules and discipline of the Methodist Episcopal Church, unite the Central Methodist Episcopal Church, the East Main Street Methodist Episcopal Church and the Sachem Street Methodist Episcopal Church, all Methodist Episcopal Churches located in the town of Norwich, New London County, State of Connecticut, into one Methodist Episcopal Church having the name of the Trinity Methodist Episcopal Church. The names of the first elected trustees of said Trinity Methodist Episcopal Church are Calvin H. Harwood, George W. Harris, Frank H. Allen, Costello Lippitt, William C. Farrington, Samuel Ferguson, John C. Morgan, J. H. Allen and H. B. Porter, and the names of the present trustees of said church are John C. Morgan, George A. Lewis, Allen S. Barbour, Clinton E. Bromley, Costello Lippitt, Calvin L. Harwood, J. H. Allen, H. B. Porter and Frank H. Allen. At the time of the union of said three churches as aforesaid, the title of the following described parcels of land with the buildings thereon, situated in said town of Norwich, was vested in and held by the trustees of said the Central Methodist Episcopal Church. The first parcel is bounded (describing it). The second parcel is bounded (describing it). Said trustees of said the Central Methodist Episcopal Church, at the time of the union of said three churches as aforesaid, also held the title of a building located on the camp ground of the Willimantic Camp Meeting Association in the town of Windham in said State of Connecticut. (The rest of the certificate simply describes the land held by each of the other two churches at the time of their alleged union.)

In witness whereof I have hereunto set my hand and seal at Cincinnati, in the State of Ohio, this third day of August, 1897.

JOHN M. WALDEN. [L. S.]
*Bishop of the Methodist Episcopal Church.*

Trinity Church by letter, or otherwise than by such union and by acquiescence therein and by proceeding as stated in paragraph 19. . . . 42. The land 'in question in this action was conveyed to the trustees of the Central Methodist Episcopal Church and their successors, by Isaac C. Swan, by a deed dated September 17th, 1891. . . ."

Upon these facts the plaintiffs claimed and asked the court to rule (*a*) that the action taken by Bishop Walden at the New England Southern Annual Conference on the 8th day of April, 1895, had the effect of uniting the Central Methodist Episcopal Church, the East Main Street Methodist Episcopal Church and the Sachem Street Methodist Episcopal Church, into one local church or society; (*b*) that by said act said three churches became extinct and ceased to exist as local Methodist Episcopal churches or societies; (*c*) that by said act said three churches with all their members were merged in and became Trinity Methodist Episcopal Church; (*d*) that by said act Trinity Methodist Episcopal Church became a local Methodist Episcopal Church, a society, and a constituent member of the Methodist Episcopal Church; (*e*) that by said act and the course pursued and the acts done by said churches and their officers and members since said act was performed, and by the Methodist Episcopal Church and its annual conferences and bishops and other authorities, as appears by the finding, said three churches have ceased to exist as local Methodist Episcopal churches or societies, and have been merged in and become Trinity Methodist Episcopal Church; (*f*) that the property described in the complaint has, by the union of said three churches, become vested in the trustees of Trinity Methodist Episcopal Church, to be held in trust according to the usage, rules, and discipline of the Methodist Episcopal Church; (*g*) that the title to said property became vested in the trustees of Trinity Methodist Episcopal Church by said act of Bishop Walden, the course pursued and the acts done by said churches and by the Methodist Episcopal Church and its annual conferences and bishops and other authorities, as appears by the finding and the provision

of chapter 138 of the Public Acts of 1897, and the certificate
of Bishop Walden referred to in the complaint.

The plaintiffs also claimed a judgment that the defendant
should execute and deliver to the trustees of Trinity Metho-
dist Episcopal Church a quitclaim deed, as demanded in the
first claim for relief, or that the court should by its judgment
set aside said mortgage and declare it void; and, that if
anything was due on said mortgage, the trustees of Trinity
Methodist Episcopal Church should be allowed to redeem,
as demanded in the third claim for relief.

The court did not rule as thus requested, but overruled
said claims and rendered judgment for the defendant.

*Henry Stoddard* and *Frank T. Brown,* for the appellants
(plaintiffs).

*Charles F. Thayer* and *Donald G. Perkins,* for the appellee
(defendant).

ANDREWS, C. J.   The piece of land which is the subject
of litigation in this case was deeded on the 17th day of Sep-
tember, 1891, by Isaac C. Swan to certain persons named and
described in the deed as the " trustees of the Central Metho-
dist Episcopal Church, of Norwich, Connecticut, . . . and
their successors in office."   The plaintiffs claim that the title
to that piece of land should be vested in them, because they
are in the law the successors in office of the grantees named
in the deed.   They say that the Trinity Methodist Episcopal
Church in Norwich is the lawful successor of the Central
Methodist Episcopal Church in Norwich, mentioned in the
deed, and that they being the trustees of the said Trinity
Church are the successors to the said grantees so named.
The question, then, in the case is whether or not the plain-
tiffs are such successors; and that depends on the power and
authority of Bishop Walden to do the things he undertook to
do, as set forth in the finding.   If they are such successors,
then the language of the deed itself conveys an equitable
title to the land sufficient to support their claim for the re-
lief sought.

The action of Bishop Walden at the Annual Conference in Providence in 1896, as is stated in his certificate recited in the finding, was intended to terminate the existence of the three Methodist Episcopal churches in Norwich, *i. e.* the East Main Street Methodist Episcopal Church, the Sachem Street Methodist Episcopal Church, and the Central Methodist Episcopal Church, and to consolidate them into one church to be named the Trinity Methodist Episcopal Church of Norwich, Connecticut, with the effect, among other things, that the trustees of the consolidated church would be in the law of the church the successors of the trustees of the churches whose existence was terminated. His authority and power to do these acts and to bring about this effect is found in one of the sections of the Book of Discipline of the Methodist Church of America. That book is made a part of the finding. Bishop Walden construed that section of the Book of Discipline as giving him that power and authority as the presiding bishop at an annual conference of the New England Southern Annual Conference within the territorial limits of which conference the said churches were located. The finding states that other bishops of that church have put the same construction on that part of the Book of Discipline, and that churches have been in the past on many occasions so united; and so far as appears the power and authority of a bishop presiding at an annual conference to make such consolidation has never been called in question. We understand that this construction of the Book of Discipline is in accordance with the uniform and universal practice of the Methodist Episcopal Church. It agrees with the common understanding of the practice of that church.

The action of Bishop Walden was binding on the defendant, and upon every member of each of said three churches. According to his ruling it would seem very plain that the plaintiffs' contention is correct. The plaintiffs are, according to the rules, usages and discipline of the Methodist Episcopal Church, the successors to the grantees named in the deed of Mr. Swan.

The consolidation of the three churches into one was a

matter of ecclesiastical law and practice; and the decision of the ecclesiastical tribunal on that matter is binding on the Superior Court and on this court. In all ecclesiastical matters the courts are bound by the decision of the ecclesiastical tribunal. It is so laid down by this court in *Whitney* v. *Brooklyn*, 5 Conn. 405, and in *Gibbs* v. *Gilead Ecclesiastical Society*, 38 id. 153. "In this class of cases we think the rule of action which should govern the civil courts, founded in a broad and sound view of the relations of church and State under our system of laws, and supported by a preponderating weight of judicial authority is, that, whenever the questions of discipline, or of faith, or ecclesiastical rule, custom or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final and as binding on them, in their application to the case before them." *Watson* v. *Jones*, 13 Wall. 679, 727; *Bouldin* v. *Alexander*, 15 id. 131.

The case of *Gaff* v. *Greer*, 88 Ind. 122, is in principle precisely identical with the one at bar. That was an action demanding the title to and the possession of lands, and the case depended upon the application of ecclesiastical law. Land had been conveyed to certain persons named in the deed and described as trustees for the Presbyterian Church in Aurora, Indiana, and to their successors in office. The church edifice was erected on this land. A disagreement had arisen between the members of the church in respect to the employment of a pastor. The matter was taken before the presbytery. The presbytery decided that the further employment of this pastor was unwise, and directed the church to secure the services of some other minister. With this decision the majority were dissatisfied, and the presbytery refusing, upon application, to recede from its position, they presented to the presbytery a paper reciting their grievances and asking for certain relief, which concluded by saying: "Failing in this we have no other alternative but to withdraw from your ecclesiastical jurisdiction." The presbytery considered the paper, and determined that when any portion of the members

of a church withdrew the remaining members constitute the church. This decision had been approved by the synod, and by the general assembly of the Presbyterian Church. The majority had possession of the church building, and continuously had regular preaching and services in conformity with the rites and ceremonies of the Presbyterian Church. The minority, under the direction of the presbytery, thereafter selected elders, elected trustees, employed another minister, demanded the possession of the church property, and, that being refused, brought the suit for its recovery. The court held and decided that the determination of the presbytery, " that when any portion of the members of a church with drew . . . the remaining members constitute the church," was binding upon it, the court, and that the minority was entitled to recover. The decision may be expressed in this way : Where a presbytery has decided that certain members of a Presbyterian Church have seceded, the decision binds the civil courts, and the seceders, although a majority, lose their rights to the church property.

There are many other cases to the same effect, among which we have examined the following ones : *State ex rel. Watson* v. *Farris*, 45 Mo. 183 ; *Robertson* v. *Bullions*, 9 Barb. 64, 134 ; *McKinney* v. *Griggs*, 5 Bush (Ky.), 401 ; *Henderson* v. *Hunter*, 59 Pa. St. 335 ; *Krecker* v. *Shirey*, 163 id. 534 ; *Philomath College* v. *Wyatt*, 27 Or. 390 ; *Shannon* v. *Frost*, 3 B. Mon. 253 ; *Smith* v. *Swormstedt*, 16 How. 288 ; *Hennessey* v. *Walsh*, 55 N. H. 515, 530 ; *Baxter* v. *McDonnell*, 155 N. Y. 83.

In *Wheelock* v. *First Presb. Church*, 119 Cal. 477, 482, the court said : " But the ecclesiastical court known as the presbytery had the power to deal with the First Presbyterian Church in all matters ecclesiastical. The church as an ecclesiastical body was under the absolute control and dominion of the presbytery, and the decisions and decrees of that body were as binding upon it as the decisions and decrees of this court are binding upon inferior judicial tribunals. Those decrees are not only binding upon the church as an ecclesiastical body, but they are binding and conclusive upon courts wherever and whenever material to pending litigation."

We think these authorities are sufficient to establish the proposition above stated, that in all matters ecclesiastical the decision of the ecclesiastical tribunals is binding on the courts; and that the action and decision of Bishop Walden to the effect that the plaintiffs are, according to the rules, usages, laws and discipline of the Methodist Church, the successors of the grantees named in the deed of Mr. Swan, ought to have been held by the Superior Court as binding upon it; that the general claims of the plaintiffs are correct, and that their prayers for relief, as the pleadings now stand, should have been granted.

It is unnecessary, in view of these conclusions, to consider the Act of the General Assembly of 1897.

The finding shows that the land was mortgaged to the Norwich Savings Society, on which mortgage the defendant has paid $514.50. It seems equitable that he should receive this back, with interest at the same rate which would have been paid to the bank. We think the third prayer of the plaintiffs ought to be granted; that is, that the plaintiffs, on paying to the defendant the amount due on said mortgage as is above specified, should be allowed to redeem said mortgage; and that upon such payment the defendant should execute to the plaintiffs a proper release deed of the premises.

There is error; the judgment is set aside and the case is remanded to the Superior Court for further proceedings as is herein directed.

In this opinion the other judges concurred.