THE NEW YORK EAST ANNUAL CONFERENCE OF THE
METHODIST CHURCH *v.* J. CLINTON SEYMOUR,
SUCCESSOR TRUSTEE (ESTATE OF
ANNA A. RUSCOE), ET AL.

KING, C. J., MURPHY, ALCORN, HOUSE and COTTER, Js.

Argued March 4—decided April 7, 1964

*John R. Cuneo* and *John E. Watson, Jr.,* for the appellant (plaintiff).

*Fred L. Griffin,* with whom was *Edward S. Rimer, Jr.,* for the appellee (defendant Marhoffer).

*Joseph H. Donnelly* appeared for the named defendant.

KING, C. J.   Anna A. Ruscoe died February 11, 1930, leaving a will dated October 1, 1918, a first codicil thereto dated March 2, 1921, and a second codicil thereto dated June 11, 1928.   Under article third of the will as modified by article first of the second codicil, the testatrix established a trust of the residue of her estate under the terms of which the income should be paid to her son, Ernest C. Ruscoe, for life.   The remainder was disposed of in

the following language: "[A]t his death, I give, devise and bequeath . . . [the residue] to the Bald Hill Methodist Episcopal Church, of Wilton, Connecticut, [hereinafter referred to as the church] to have and to hold the same absolutely to it and to its successors and assigns forever".

At the time of the testatrix' death and for a few years thereafter until about 1936, the church held services and carried on its usual activities. Thereafter it abandoned services and proceeded to discontinue its existence. By 1939 the formalities of the abandonment and discontinuance had been completed, and the real estate had been deeded to the named plaintiff. In the winding-up or discontinuance proceedings, however, no assignment or other disposition of the remainder interest appears to have been attempted; nor is there anything to indicate that this interest was in any way considered.

The life income beneficiary died in 1961, and the trustee applied to the Court of Probate for the district of Norwalk for an ascertainment of the remaindermen and distributees. See General Statutes § 45-93. The court found that the bequest to the church had "lapsed", that the remainder interest was intestate, and that it should be distributed to Susannah Marhoffer, hereinafter referred to as the defendant, who was the daughter of the life income beneficiary and who was determined by the court to be the sole heir at law and next of kin of the testatrix.

The trustees of the church at all times conducted it in accordance with the discipline of the Methodist Episcopal Church, now known as the Methodist Church. See General Statutes (Rev. to 1962) § 33-276. The national organization of the Methodist Church is divided, territorially, into "conferences",

and Wilton, Connecticut, is a portion of the New York area of the national organization and a part of a "conference" known as The New York East Annual Conference of the Methodist Church, hereinafter referred to as the plaintiff. The plaintiff claimed the remainder interest by virtue of its church rules and discipline. It appealed to the Superior Court from the decision of the Court of Probate. From an adverse decision in the Superior Court it has taken this appeal.

The defendant correctly concedes in her brief that the fact that the Bald Hill Methodist Episcopal Church was unincorporated did not impair its right and power to receive a bequest of personal property for religious or charitable purposes. General Statutes §§ 33-243, 47-2; *Brinsmade* v. *Beach,* 98 Conn. 322, 333, 119 A. 233.

There is no real dispute, nor could there be, that upon the death of the testatrix, on February 11, 1930, the remainder interest in the trust corpus vested in the church. *Gaffney* v. *Shepard,* 108 Conn. 339, 345, 143 A. 236. Thus at the date of the death of the testatrix, there was clearly no invalidity nor intestacy.

The church went out of existence sometime after 1936 but before 1940. During this period, the life income beneficiary was still alive and in the enjoyment of the trust income, which he continued to receive until his death in 1961. At that time the trust proper terminated except for the distribution of the corpus. Had the remainderman been a natural person instead of a church, the death of the remainderman would have created no difficulty, since the vested remainder interest would have formed part of his estate and could have been distributed to his executor or administrator. Although

the church went out of existence, which would correspond to the death of a natural person, unlike a natural person it had no "estate" nor personal representative, as such.

The remainder interest was bequeathed to the church in language about as nearly absolute as could have been chosen. No trust or condition was imposed or suggested in the wording of the will. On the contrary, the right to expend the corpus was conferred by the terms employed. *Pierce* v. *Phelps,* 75 Conn. 83, 85, 52 A. 612. Such a donation, although not a trust, is, however, a gift for a religious use, and, so, is a gift for a charitable use. *Cheshire Bank & Trust Co.* v. *Doolittle,* 113 Conn. 231, 232, 155 A. 82; *Brinsmade* v. *Beach,* supra, 332. Even though given, as here, in apparently absolute terms, the donee may not divert it to a use not fairly within the expressed intention of the donor. General Statutes § 47-2; *Legat* v. *Adorno,* 138 Conn. 134, 146, 83 A.2d 185. Where the gift is made in absolute terms, the intent of the donor will ordinarily be assumed to be that the donated property was to be devoted to the general purposes of the donee as authorized in its charter, or if, as here, it has no charter, then to the general purposes actually being carried out. *Eccles* v. *Rhode Island Hospital Trust Co.,* 90 Conn. 592, 599, 98 A. 129; Zollmann, American Church Law, §§ 234, 241, 242, 245, 250, 251, 255, 257; 45 Am. Jur., Religious Societies, § 53. The parties in effect stipulated that these purposes, in this case, were the operation of a Methodist Church in compliance with the discipline of that denomination. Enforcement of the conditions of such a gift is committed to the attorney general, under the statute which provides that "he shall represent the public interest in the protection of any gifts, legacies or

devises intended for public or charitable purposes". General Statutes § 3-125. This statute in effect codifies the general equity rule. See *Healy* v. *Loomis Institute,* 102 Conn. 410, 422, 128 A. 774; 4 Scott, Trusts (2d Ed.) § 348.1, p. 2553. The attorney general should have been made a party to this proceeding, since it called in question a charitable gift.

Certain other procedural irregularities will now be mentioned. Notice of this appeal from probate should have been given to the legal representative of the testatrix, and to the legal representative of her son since he appears to have been her heir at law. If, as the defendant herein claims, the corpus of the trust became intestate, it would form an asset of the testatrix' estate. The distributee of the testatrix' intestate property, if there was any, would appear to be the estate of her son rather than the defendant since her son would be her heir at law. These matters should be corrected before any retrial. General Statutes § 45-294; *Donovan's Appeal,* 40 Conn. 154, 155.

Paragraph 188 (3) of the rules of the central organization of Methodist Churches, called "Doctrines and Discipline of the Methodist Church" provides that "[a]ny gift, legacy, devise, annuity or other benefit to a . . . local church that accrues or becomes available after said . . . church has been discontinued or abandoned shall become the property of the trustees of the Annual Conference within whose jurisdiction the said discontinued or abandoned church was located."

In ecclesiastical matters, the rules and discipline of the central organization, which are binding on a local church, are adopted and enforced by the courts where fairly applicable. *Trustees of Trinity Methodist Episcopal Church* v. *Harris,* 73 Conn. 216, 223,

47 A. 116. That the disposition of this property upon the abandonment of the local church was a proper subject for the rules and discipline of the central organization is clear. Ibid. There is nothing in the terms of the will inconsistent with the rule and discipline quoted above. If this or some other rule of similar general purport was operative at the time of the winding up of the church, it would appear adequate to transfer the church's vested remainder interest to the plaintiff, and, if so, the courts would provide such equitable assistance, if any, as was needed to accomplish that end. Id., 226; *Louisiana District Church of the Nazarene* v. *Church of the Nazarene,* 132 So. 2d 667, 678 (La. App.); 76 C.J.S. 889, Religious Societies, § 100. The court in effect held to the contrary, and in this determination there was error.

The foregoing book of discipline, which was made an exhibit, appears from its date to have been published in 1960, and thus we cannot be certain that a similarly operative rule formed a part of the Methodist discipline applicable to the church at the date of its winding up.[1] The defendant makes no claim on this ground, but the procedural shortcomings make a new trial necessary on this ground also.

The defendant makes much of the case of *Connecticut Bank & Trust Co.* v. *Coles,* 150 Conn. 569, 192 A.2d 202. The facts in that case were most unusual. A charitable testamentary trust in a remainder interest which had vested at the testa-

[1] The authenticity of the exhibit purporting to be the Doctrines and Discipline of the Methodist Church (1960) was not properly established at the trial, either by proof or stipulation, nor was it properly treated in the preparation of the appeal record. See cases such as *Pilon* v. *Yard,* 147 Conn. 720, 721, 158 A.2d 738. Even though the parties did not raise this point, in a new trial it should not be overlooked.

tor's death became impossible of execution because of the death of all possible beneficiaries of the charitable trust. The doctrine of cy pres was inapplicable since the language of the testator negated any other charitable purpose than that stated in his will. It was consequently held that the remainder interest became intestate and that a resulting trust should be imposed to transfer it to the testator's estate. We find nothing in the *Connecticut Bank & Trust Co.* case which in anyway militates against the result we reach here.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.