THE CONNECTICUT BANK AND TRUST COMPANY, TRUSTEE (ESTATE OF SHAIA D. TULIN) *v.* ALBERT L. COLES, ATTORNEY GENERAL, ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued April 4—decided May 28, 1963

*Harry L. Nair,* with whom was *Jacob Schwolsky,* for the appellants (defendants Abraham Tulin et al.).

*Elihu H. Berman,* with whom, on the brief, was *George J. Ritter,* for the appellee (defendant Adeline B. Halpern, executrix).

BALDWIN, C. J.   The plaintiff, as trustee of a trust established under the will of the late Shaia D. Tulin of Hartford, brought this suit on the death of Ike Tulin, a son of Shaia and the only income beneficiary of the trust, to determine how the trust corpus should be distributed.   The plaintiff joined

as defendants the executrix of Ike Tulin's estate, both of Shaia's living children, the legal representatives of his other children, now deceased, and the attorney general, who is charged under General Statutes § 3-125 with representing the public interest in protecting any charitable gifts or legacies.

Shaia was born in 1849 in the town of Chomsk, Poland, and lived there until he emigrated to the United States in 1887. Chomsk had a population of about 3000 and was predominantly Jewish. Shaia's father, grandfather and great grandfather all had been born in Chomsk, had lived and died there, and had been leaders in the Jewish community of the town. Shaia's children were born there. About 1931, while on a visit to Chomsk, Shaia established two charitable funds there: one, known as the free loan fund, to provide loans without interest to needy Jewish businessmen and laborers in Chomsk, and the other to provide for the distribution, under the direction of the local rabbi and a local bank official, of free meal and wood to the poor Jewish people of Chomsk. Periodically during his life, Shaia as well as his children and their families made further contributions to these charities.

On March 26, 1934, Shaia executed a will in which, among other dispositions, he made the following bequests: to a son, Samuel, a specific legacy in the form of a release of a note secured by mortgage on Samuel's real estate; to the free loan fund, a general legacy; and, in the residuary clause, to each of the testator's three other living children, Abraham, Ike and Sarah, an absolute estate in one-third of the residuum, with an alternative disposition of the share of any of them who predeceased the testator to the descendants of the one predeceasing.

On July 15, 1938, the testator executed a codicil to the will. By this time Samuel had died and Ike was having difficulties with his wife and children and was living apart from them. By the codicil, the testator altered his testamentary plan in several particulars. Among other changes, he made a new disposition of the legacy to Samuel. He also expressly revoked the residuary clause, but in the new residuary clause Abraham and Sarah each received the same one-third share. With regard to the remaining third, which had been bequeathed to Ike outright, the codicil provided: "C. I give, bequeath and device [sic], one of said three parts to The Hartford-Connecticut Trust Company, of Hartford, Connecticut, in trust nevertheless, for the following uses and purposes, to wit:—(1). To pay the net income therefrom in semi-annual installments to my son, Ike Tulin, sometimes known as William Ike Tulin, of Norfolk, Virginia, for the term of His [sic] natural life. (2). Upon the decease of my son, Ike Tulin, the trustee shall pay a sum not exceeding Five Hundred ($500) Dollars per year to each of the following: a. The organization having charge of The Free Loan Fund (sometimes known as the Bashe Tulin Fund) which fund is now existing in my native town of Chomsk, Poland, to be used for the same purposes seth [sic] forth in paragraph eighteen of my will. b. The Committee or organization of my said native town of Chomsk, Poland, organized for the purpose of purchasing and distributing free to the poor Jewish people of said Chomsk, meal and wood, to be used for the same purpose in accordance with the custom or plan which I have instituted there. c. The Trustee is hereby authorized and empowered, as often as shall be necessary, to apply or expend for said two uses,

such portion of the principal of said trust estate as may be necessary so that the allowance to each shall approximate Five Hundred ($500) Dollars per year."

On August 25, 1938, Shaia died. His survivors included his children Abraham, Ike and Sarah. Both the will and the codicil were admitted to probate on September 20, 1938. The plaintiff was named executor of the estate and trustee of the trusts created by the will and the codicil. Thereafter, the plaintiff filed its administration account and a supplemental account, which were duly accepted by the Court of Probate on December 8, 1939, and June 23, 1941, respectively. On the latter date, the plaintiff qualified as trustee of the residuary trust created under the testator's codicil as hereinbefore quoted. Pursuant to the residuary clause of this codicil, the plaintiff, as executor, divided the residue of the testator's estate into three equal parts. It paid one part outright to the testator's son Abraham and another part outright to the testator's daughter Sarah. On or about July 17, 1941, the plaintiff as executor transferred the remaining one-third part to itself as trustee of the residuary trust. From that date, Ike Tulin was paid the income of this trust until his death on September 29, 1942.

Although the general legacy left to the free loan fund of Chomsk under the will of March 26, 1934, was paid to that fund in July, 1939, neither that fund nor the meal and wood fund has been in existence since 1942. The plaintiff has been advised by the United States department of state that during the German occupation of Chomsk in 1942 its entire Jewish population was exterminated. In consequence, neither the Chomsk charities nor the objects of their benefaction have ever been able to

enjoy the residuary gift. Demand has been made that the corpus and accumulated income of this trust be paid to the testator's heirs at law. After a trial in the Superior Court, that court found that the "remainder interest in the trust established under . . . the codicil after the death of . . . the life tenant is a charitable trust [but the] extermination of the Jewish community of Chomsk has made it impossible to effectuate the purposes of the trust." The court further found in this gift no general charitable purpose but merely the limited purpose of benefiting the Jewish population of Chomsk. Accordingly, it correctly held that the doctrine of approximation (cy pres) could not be applied in this case. See *Waterbury Trust Co.* v. *Porter,* 131 Conn. 206, 215, 38 A.2d 598; *Duncan* v. *Higgins,* 129 Conn. 136, 140, 26 A.2d 849. Having determined that the charitable purpose could not now be effectuated, the court was confronted with the mutually adverse claims, on the one hand, of the executrix under the will of Shaia's son Ike and, on the other hand, of Shaia's other heirs at law. On the basis of the doctrine of dependent relative revocation, the court reinstated the residuary provision of Shaia's will of March 26, 1934, which had given his son Ike, the life tenant, an absolute interest in this one-third of the residuary estate. Accordingly, a judgment was rendered ordering the plaintiff to pay over the trust fund, after deducting certain appropriate expenses, to the executrix of Ike Tulin's estate.

Shaia's other heirs at law have appealed from that judgment. Their claim is essentially twofold: (1) that the doctrine of dependent relative revocation is not applicable, and (2) that even if it was applicable, the lower court in applying it erred in

certain rulings excluding evidence and in the conclusions it reached. The view we take of the first of these claims renders it unnecessary to consider the second.

"The gist of the doctrine [of dependent relative revocation] is that if a testator cancels or destroys a will with a present intention of making a new one immediately and as a substitute and the new one is not made or, if made, fails of effect for any reason, it will be presumed that the testator preferred the old will to intestacy, and the old one will be admitted to probate in the absence of evidence overcoming the presumption." *LaCroix* v. *Senecal,* 140 Conn. 311, 315, 99 A.2d 115. "It is a rule of presumed intention rather than of substantive law; . . . and is applicable in cases of partial as well as total revocation." Ibid. Thus, in a case where the appropriate facts are present, the doctrine becomes applicable merely to raise a presumption which will prevail in the absence of sufficient rebuttal evidence. See *Security Co.* v. *Snow,* 70 Conn. 288, 293, 39 A. 153; *Dunham* v. *Averill,* 45 Conn. 61, 81.

The facts in the case at bar do not permit the application of this doctrine, and therefore the presumption does not arise. In the testator's codicil, we have an express revocation of a prior testamentary provision together with a substituted dispositive provision substantially different. *LaCroix* v. *Senecal,* supra, 318; *Security Co.* v. *Snow,* supra, 294. This substitutionary provision not only was valid while the codicil remained alterable but also became operative when the codicil was admitted to probate on September 20, 1938. At that time, an equitable estate in one-third of the testator's residuary estate had vested in Ike Tulin for life. At the same time, an equitable remainder, subject to the

preceding life estate, in this same one-third of the residuary estate had vested in the two Chomsk charities. See *Colonial Trust Co.* v. *Waldron,* 112 Conn. 216, 219, 152 A. 69; *Gaffney* v. *Shepard,* 108 Conn. 339, 344, 143 A. 236; *Mitchell* v. *Mitchell,* 73 Conn. 303, 307, 47 A. 325; *Williams* v. *Williams,* 135 Wis. 60, 65, 115 N.W. 342; Cleaveland, Hewitt & Clark, Probate Law and Practice § 436; 5 Page, Wills, p. 150 (Bowe-Parker Rev. 1962). The equitable life tenant was, as a matter of fact, paid the income from this residuary trust from its inception until his death on September 29, 1942. The inability of the vested remaindermen in 1942 to enjoy their property rights in this fund, upon the termination of the life estate, certainly cannot be said to have retroactively rendered their vested rights void ab initio. See *Williams* v. *Williams,* supra. Therefore, we have a situation where the codicil was effective and became operative upon the admission of the will and codicil to probate.

It was not until much later that the gift of the remainder interest to the charities in Chomsk failed. This failure was not due to any mistake on the part of the testator. The circumstances which render the gift ineffective arose subsequent to the admission of the will and codicil to probate. There is nothing in the testaments or in the circumstances surrounding their execution to indicate that the testator anticipated the failure of this gift and had any intention in that event. The gift did not fail, as in *LaCroix* v. *Senecal,* supra, 314, because of the legal inadequacy of the codicil. The simple fact is that the beneficiaries of the remainder interest ceased to exist after the remainder interest had vested in them. Moreover, the change in the gift to Ike Tulin by the codicil, viewed in the light of

Ike's difficulties with his wife and family and the bequests in the codicil of nominal sums to Ike's children, indicates that the testator had the children in mind and negates any presumption that Ike's estate was intended to take the remainder interest if the charitable trust failed. See *LaCroix* v. *Senecal,* supra, 315; note, 24 A.L.R.2d 514; 2 Page, Wills § 21.60 (Bowe-Parker Rev. 1960); Thompson, Wills (3d Ed.) § 168.

The case of *Security Co.* v. *Snow,* 70 Conn. 288, 39 A. 153, can be distinguished, on its facts, from the case at bar. It is true that the trust created by a codicil in that case in favor of the testator's daughter Alice was administered by the trustee, her mother, the testator's widow, for nine years until she died. The gift to the remaindermen was void because it violated the Statute of Perpetuities in force at the testator's death. Id., 292; see *Leake* v. *Watson,* 60 Conn. 498, 506, 21 A. 1075; Rev. 1888, § 2952. Consequently, the interest of the remaindermen never vested. Moreover, the codicil gave the trustee broad discretionary powers which made it possible for her, in her discretion, to deliver to Alice not only the income but all of the principal of the trust if she so decided, thus making it possible for the trustee to terminate the trust. The codicil clearly manifested the intent of the testator that Alice should have, eventually, the same share in his estate as he had originally provided for her, outright, in an earlier will.

Since it is no longer possible to effectuate the purposes for which the present remainder was given, and the doctrine of approximation cannot be applied, a resulting trust attaches in favor of the testator's estate. *Waterbury Trust Co.* v. *Porter,* 131 Conn. 206, 217, 38 A.2d 598; *Giersch* v. *Grady,*

85 Conn. 685, 687, 84 A. 103; 4 Scott, Trusts (2d Ed.) § 413. Since this trust in favor of the estate results by operation of law and not by reason of any supposed intention of the testator, the subject matter of the trust should be distributed to the testator's heirs at law. *Industrial National Bank* v. *Drysdale,* 84 R.I. 385, 394, 125 A.2d 87; *Holmes* v. *Welch,* 314 Mass. 106, 110, 49 N.E.2d 461; *Searcy* v. *Lawrenceburg National Bank,* 312 Ky. 610, 612, 229 S.W.2d 312; note, 62 A.L.R.2d 763.

There is error, the judgment is set aside and the case is remanded with direction to render judgment in accordance with this opinion.

In this opinion the other judges concurred.