## CARL J. HERZOG FOUNDATION, INC. *v.* UNIVERSITY OF BRIDGEPORT
(14623)

Dupont, C. J., and Foti and Lavery, Js.

Argued February 29—officially released June 25, 1996

*John F. Lambert,* for the appellant (plaintiff).

*Frederick S. Gold,* with whom was *Ellen A. Jawitz,* for the appellee (defendant).

DUPONT, C. J. The plaintiff, Carl J. Herzog Foundation, Inc., appeals from the judgment of the trial court dismissing its action on the ground that it lacked standing to enforce the provisions of a charitable gift. The issue on appeal is whether the Connecticut Uniform Management of Institutional Funds Act (CUMIFA); General Statutes §§ 45a-526 through 45a-534; provides standing for the donor of a restricted charitable gift to seek to enforce the restriction when the governing board of the donee of that gift has not received the written consent of the donor to deviate from the restriction.

The plaintiff commenced an action against the defendant, University of Bridgeport, seeking injunctive and other relief in connection with a gift made by it to the defendant. The plaintiff alleged in its revised complaint that prior to August 12, 1986, it made various grants to the defendant "to provide need-based merit scholarship aid to disadvantaged students for medical related education." On August 12, 1986, the plaintiff agreed, by letter, to participate in a matching grant program that would provide need-based merit scholarships to disadvantaged students for medical related education on a continuing basis. On September 9, 1986, the defendant wrote a letter accepting the offer of a matching grant of up to $250,000. Over a period of time, the defendant raised the necessary $250,000, which the plaintiff matched in accordance with the agreement. The plaintiff transferred $144,000 on June 26, 1987, and $106,000 on June 28, 1988, to the defendant. The grants

were used to provide scholarships to students in the defendant's nursing program. On November 21, 1991, however, the plaintiff was informed that the defendant had closed its nursing school on June 20, 1991.

Pursuant to the provisions of CUMIFA, the plaintiff alleged that the defendant was an "institution" within the meaning of General Statutes § 45a-527 (1), that the matching grant constituted "institutional funds" within the meaning of § 45a-527 (2), and that the letter of August 12, 1986, which set forth the restrictions and conditions of said grant, constituted a "gift instrument" as defined in § 45a-527 (6). See *Yale University* v. *Blumenthal*, 225 Conn. 32, 621 A.2d 1304 (1993).

The plaintiff's alleged injury is that the funds are no longer being used for their specified purpose. Paragraph fourteen of the revised complaint states: "The [plaintiff] has been given to understand and believes that the said institutional funds have been co-mingled with the general funds of the [defendant], that said institutional funds are not being used in accordance with the 'Gift Instrument' under which said institutional funds were transferred to [the defendant], and that said institutional funds have in fact been spent for general purposes of [the defendant]."

The plaintiff requested a temporary and permanent injunction, ordering the defendant "to segregate from its general funds matching grants totaling $250,000," an accounting for the use of the fund from the date of receipt until present, and a reestablishment of the fund in accordance with the purposes outlined in the gift instrument, and, in the event that those purposes could not be fulfilled, to revert the funds and direct them to the Bridgeport Area Foundation, which is prepared to administer the funds in accordance with the original agreement.

The defendant moved to dismiss the suit for lack of subject matter jurisdiction on the ground that the plaintiff lacked standing. The trial court held that the act did not provide a donor with the right to enforce restrictions contained in a gift instrument, and, therefore, the plaintiff lacked standing to bring suit. The trial court noted that the attorney general, pursuant to General Statutes § 3-125,[1] could bring suit to enforce the gift, and it dismissed the action.

A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts. *Barde* v. *Board of Trustees*, 207 Conn. 59, 63, 539 A.2d 1000 (1988). A motion to dismiss raises the question of whether a jurisdictional flaw is apparent on the record or by way of supporting affidavits. *Bradley's Appeal from Probate*, 19 Conn. App. 456, 461–62, 563 A.2d 1358 (1989). If a resolution of a disputed fact is necessary to determine the existence of standing when raised by a motion to dismiss, a hearing may be held in which evidence is taken. *Weidenbacher* v. *Duclos*, 234 Conn. 51, 54 n.5, 661 A.2d 988 (1995). In this case there were no accompanying affidavits, no hearing was held and the defendant accepted the allegations of the plaintiff's complaint as true, for the purpose of the motion to dismiss only. There is no transcript and there are no exhibits. We, therefore, decide the appeal solely on the allegations of the plaintiff's complaint.

"Standing focuses on whether a party is the proper party to request adjudication of the issues, rather than on the substantive rights of the aggrieved parties. *Nye* v. *Marcus*, [198 Conn. 138, 141, 502 A.2d 869 (1985)]. It is a basic principle of law that a plaintiff must have

---

[1] General Statutes § 3-125 provides in relevant part that the attorney general "shall represent the public interest in the protection of any gifts, legacies or devises intended for public or charitable purposes. . . ."

standing for the court to have jurisdiction. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. *Ardmare Construction Co.* v. *Freedman,* 191 Conn. 497, 501, 467 A.2d 674 (1983), quoting *Hiland* v. *Ives,* 28 Conn. Sup. 243, 245, 257 A.2d 822 (1966). Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . *Unisys Corp.* v. *Dept. of Labor,* 229 Conn. 689, 693, 600 A.2d 1019 (1991)." (Internal quotation marks omitted.) *Weidenbacher* v. *Duclos,* supra, 234 Conn. 61–62. Thus, standing does not hinge on whether the plaintiff will ultimately be entitled to obtain relief on the merits of an action, but on whether he is entitled to seek the relief. *Yale University* v. *Blumenthal,* supra, 225 Conn. 36.

"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. Cf. *Zoning Board of Appeals* v. *Planning & Zoning Commission,* 27 Conn. App. 297, 605 A.2d 885 (1992)." *Steeneck* v. *University of Bridgeport,* 235 Conn. 572, 579, 668 A.2d 688 (1995). "The

concepts of 'standing' and 'legal interest' are to be distinguished. The legal interest test goes to the merits, whereas 'standing' concerns the question 'whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.' *Association of Data Processing Service Organizations, Inc.* v. *Camp*, 397 U.S. 150, 153, 90 S. Ct. 827, 25 L. Ed. 2d 184 [1970]; see *Ducharme* v. *Putnam*, 161 Conn. 135, 139, 285 A.2d 318 [1971]." *Mystic Marinelife Aquarium, Inc.* v. *Gill*, 175 Conn. 483, 492, 400 A.2d 726 (1978).

The plaintiff claims that CUMIFA provides it with standing to bring suit in order to enforce the conditions of its gift.[2] "Statutory aggrievement exists by legislative fiat which grants an appellant standing by virtue of particular legislation . . . ." *Buchholz's Appeal from Probate*, 9 Conn. App. 413, 416, 519 A.2d 615 (1987). The issue, therefore, is whether CUMIFA establishes standing for the plaintiff by creating an arguably protectable interest, within the meaning of the statute, of the plaintiff in its capacity as a donor to an "institutional fund." A statute need not specifically provide that certain persons come within its protection in order to establish aggrievement as long as that protection may be implied fairly. Id., 421–22; see *Tomlinson* v. *Board of Education*, 226 Conn. 704, 721, 629 A.2d 333 (1993).

General Statutes § 45a-533 provides that "[w]ith the written consent of the donor, the governing board may release, in whole or in part, a restriction imposed by the applicable gift instrument on the use or investment of an institutional fund." It is this section of CUMIFA on which the plaintiff relies in order to establish stand-

---

[2] The plaintiff does not rely on the common law to bring this cause of action. We, therefore, need not consider whether the plaintiff is classically aggrieved. See *Molitor* v. *Molitor*, 184 Conn. 530, 532–33, 440 A.2d 215 (1981).

ing. It argues that § 45a-533 creates a right for a donor, namely, the right to consent or to withhold consent to the release of a restriction, which did not exist at common law.[3] The statutory right, the plaintiff argues, gives it standing to enforce the restriction. The plaintiff argues that if a donor cannot enforce the statute, by requiring a donee to obtain a donor's consent before a donee unilaterally abolishes a restriction, the statute would be rendered meaningless. The defendant argues that this statute was meant only to provide the governing board of a fund with an efficient means to release a restriction and not to create an enforceable right in the donor to retain the restriction, which right, if it exists, lies with the attorney general, not the donor.

Because CUMIFA does not expressly establish authority for the plaintiff to bring suit, we must look to the legislative intent to determine whether the legislature intended to establish a protectable interest of a donor by requiring a donor's consent before a governing board may release a restriction. " 'In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter.' " *Steeneck* v. *University of Bridgeport*, supra, 235 Conn. 581, quoting *Frillici* v. *Westport*, 231 Conn. 418, 431–32, 650 A.2d 557 (1994).

In reviewing the legislative history of CUMIFA, we conclude that the legislature intended to provide the

---

[3] Section 367 of the Restatement (Second), of Trusts, provides: "If a charitable trust has once been validly created, the settlor cannot revoke or modify it unless he has by the terms of the trust reserved a power to do so." The comments to this section recognize that the donor could consent to minor modifications. The donor generally could not modify a trust or release a restriction on a trust. The plaintiff makes no claim that it reserved a right to revoke or modify the gift in the gift instrument.

governing board of an institutional fund with a means, which did not exist at common law, to seek a release of a condition from the donor directly.[4] The question, however, is whether the statute establishes a protectable interest in a donor that can be adjudicated. We first note that the right championed by the plaintiff, namely, a statutory interest in a completed gift that is sufficient to require its consent to a change in a restriction on its gift, is not inconsistent with the statutory right of a donee to obtain a release of a restriction on the gift.

We next turn to the provisions of the Uniform Management of Institutional Funds Act (UMIFA); 7A U.L.A.

---

[1] During a House debate regarding the bill, Representative James F. Bingham remarked: "Over the past years, governing boards of eleemosynary institutions particularly colleges and universities have sought to make effective use of endowment and other investment funds. This bill achieves these ends and achieves a rational solution to the problems by providing a standard of prudent use of appreciation and investment funds, specific investment authority, authority to delegate investment decisions, a standard of business care and prudence to guide governing boards in the exercise of their duties under the act, a method of releasing restrictions on use of funds or of selection of investments by donor acquiescence or court actions." 16 H.R. Proc., Pt. 2, 1973 Sess., pp. 5723–24. Representative David H. Neiditz commented: "This bill has this impressive support because it is a bill to aid charitable corporations of this state in the better management of their endowments and which recognizes economic reality." Id., p. 5724. Representative Albert R. Webber stated that the bill "will give [private schools] the opportunity to release funds which they so sorely need . . . . It could release funds, possibly, for some expansion programs which, of course, means more jobs. . . . We're talking about lots of dollars, lots and lots of dollars, Mr. Speaker, that are tied up that they just can't use and which they need, as I say, so very desperately." Id., p. 5730. Representative William A. Bevacqua confirmed these sentiments. "We hear of private institutions who are suffering financial straits because they cannot meet the needs of their operating expenses and when we look on paper we see that they are ostensibly very wealthy institutions by virtue of the portfolios that many of them maintain in terms of the stock and whatnot that they hold. But if we look very carefully at these . . . endowments we see that they are very often so restrictive in nature that what on paper appears to be a very wealthy institution turns out, in point of practical fact, to be an institution that's on the verge of bankruptcy simply because they cannot generate the operating

713 (1985); and the comments thereof in order to resolve the definition of an "institutional fund" in an action brought pursuant to CUMIFA. See *Yale University* v. *Blumenthal*, supra, 225 Conn. 37–38. The plaintiff here primarily relies on the comments of UMIFA to establish standing. "A court can 'properly consider the official comments as well as the published comments of the drafters as a source for determining the meaning of an ambiguous provision [of a uniform act].' 2B J. Sutherland, [Statutory Construction (5th Ed. 1992)] § 52.05; *Hill* v. *Blake*, 186 Conn. 404, 408, 441 A.2d 841 (1982); *General Products Co.* v. *Bezzini*, 33 Conn. Sup. 654, 656–57, 365 A.2d 843 (1976); *Griffin* v. *S. W. Devanney & Co.*, [775 P.2d 555, 560–61 (Colo. 1989)]. . . . [Section] 45a-534 . . . explicitly state[s] that '[s]ections 45a-526 to 45a-534, inclusive, [CUMIFA] shall be so applied and construed as to effectuate their general purpose to make uniform the law with respect to the subject of said sections among those states which enact them.' "[5] *Yale University* v. *Blumenthal*, supra, 38.

The prefatory note of UMIFA recognizes that the act provides guidance and rights to managers for administering funds. The act, among other things, establishes a means by which an institution may obtain a release of a restriction on a gift. The note states: "Over the past several years the governing boards of eleemosynary institutions, particularly colleges and universities, have sought to make more effective use of endowment and other investment funds. . . . . One further problem regularly intruded upon the discussion of efforts to free trustees and managers from the alleged limitations on their powers to invest for growth and meet the financial

---

funds from their endowment that they need to carry on the very good work that they do." Id., pp. 5734–35, remarks of Representative Bevacqua.

[5] In keeping with the intent to provide uniformity of law, as expressed in § 45a-534, we looked to other jurisdictions to determine how they have addressed the issue but could find no relevant case law.

needs of their institutions. Some gifts and grants contained restrictions on use of funds or selection of investments which imperiled the effective management of the fund. *An expeditious means to modify obsolete restrictions seemed necessary.* The Uniform Act offers a rational solution to these problems by providing . . . (5) a method of releasing restrictions on use of funds or selection of investments *by donor acquiescence or court action.*" (Emphasis added.) UMIFA, 7A U.L.A. 706, prefatory note (1985). This language clarifies that the act provides the governing body of a fund with the means to release a restriction, as well as recognizing that such release may be obtained by donor acquiescence or court action.

The prefatory note illustrates the drafters' intent to allow a donee to obtain a release of a restriction, in whole or part, only *with the written consent of the donor*, or by court authority in some instances. The prefatory note provides an answer to why this is so. "*It is established law that the donor may place restrictions on his largesse which the donee institution must honor.* Too often, the restrictions on use or investment become outmoded or wasteful or unworkable. There is a need for review of obsolete restrictions and a way of modifying or adjusting them. *The Act authorizes the governing board to obtain the acquiescence of the donor to a release of restrictions* and, in the absence of the donor, to petition the appropriate court for relief in appropriate cases."[6] (Emphasis added.) UMIFA, 7A U.L.A. 709, prefatory note (1985).

---

[6] General Statutes § 45a-533 (b) provides: "If written consent of the donor cannot be obtained by reason of his death, disability, unavailability or impossibility of identification, the governing board may apply, in the name of the institution, to the superior court for a judicial district in which the institution conducts its affairs for release of a restriction imposed by the applicable gift instrument on the use or investment of an institutional fund. The attorney general shall be notified of the application and shall be given an opportunity to be heard. If the court finds that the restriction is obsolete, inappropriate or impracticable, it may by order release the restriction in whole or in part.

The defendant argues that one of UMIFA's comments expressly recognizes that no enforcement rights are provided to the donor by the act. The comment states: "No federal tax problems for the donor are anticipated *by permitting release of a restriction.* The donor has no right to enforce the restriction, no interest in the fund and no power to change the eleemosynary beneficiary of the fund. He may only acquiesce in a lessening of a restriction already in effect." (Emphasis added.) UMIFA, 7A U.L.A. 724, comment (1985). This paragraph merely contemplates the tax implications when a donor does consent in writing to a release of a restriction, and does not contemplate situations where the governing board fails to receive the written consent of a donor and unilaterally releases itself from a restriction. This language cannot be translated into an interpretation of UMIFA that prevents a donor from seeking relief from a court when a governing board releases itself from a restriction without the written consent of the donor as required by statute, especially in light of the other comments and express limitation of the rights of governing boards that requires adherence to the conditions of a gift instrument.

The comments and prefatory note recognize that a donor has an interest in a restriction and in whether it should be released. The question then becomes whether the sole right to speak to that interest lies with the attorney general, to the exclusion of a donor.

The defendant argues that the drafters of the uniform act, as adopted by Connecticut, did not intend to create a protectable interest in a donor because the act and CUMIFA conform to the common law, which provided that a donor of a gift could not enforce the provisions of the gift, absent any express reservation of a right to

---

A release under this subsection may not change an endowment fund to a fund that is not an endowment fund."

revoke or enforce the conditions of a gift. The defendant concludes, therefore, that the attorney general is the only individual who can enforce the provisions of the gift on behalf of the public.

A comment following § 7 of UMIFA, which is General Statutes § 45a-533 of CUMIFA, recognizes the donor's lack of a property interest in a gift. "Although the donor has no property interest in a fund after the gift, nonetheless *if it is the donor's limitation that controls the governing board and he or she agrees that the restriction need not apply,* the board should be free of the burden. See Restatement of Trusts (2d) § 367." (Emphasis added.) Although a donor of an irrevocable gift has no property interest in that gift, it does not follow that no protectable statutory interest exists for the purpose of standing. A property interest is one in which an individual or entity has an ownership or share of some tangible or intangible item. A protectable interest is one in which an individual or entity is enabled to defend or to preserve. We have already concluded that the statute does create a protectable interest in a donor, but we now examine whether that interest can be preserved only by the attorney general on behalf of a donor.

The attorney general represents the beneficial interest in public charities, and the general beneficiaries of a trust or gift have no standing to bring an action to enforce their interest in the receipt of any funds established by a gift for their benefit. *Averill* v. *Lewis*, 106 Conn. 582, 138 A. 815 (1927). That a general class of beneficiaries has no standing to enforce a gift does not mean, however, that the donor of a gift does not have an interest, when granted by statute, to seek court aid in the enforcement of a restriction on the gift. The attorney general is a necessary party to suits involving the enforcement of charitable trusts. *Copp* v. *Barnum*, 160 Conn. 557, 276 A.2d 893 (1970); *Lieberman* v. *Rogers*, 40 Conn. Sup. 116, 481 A.2d 1295 (1984). Others

may also have standing to enforce charitable trusts, such as trustees, donors of gifts and heirs and executors of wills, which standing includes the right to bring actions or to intervene in actions brought to enforce provisions of trusts or wills. See *Hartford* v. *Larrabee Fund Assn.*, 161 Conn. 312, 288 A.2d 71 (1971); *New York East Annual Conference* v. *Seymour*, 151 Conn. 517, 199 A.2d 701 (1964); *Connecticut Bank & Trust Co.* v. *Coles*, 150 Conn. 569, 192 A.2d 202 (1963); *Averill* v. *Lewis*, supra, 106 Conn. 582; *Healy* v. *Loomis Institute*, 102 Conn. 410, 128 A.2d 774 (1925). We conclude that the attorney general does not have the exclusive right to enforce § 45a-533 (a).

The defendant argues that a conclusion that the donor has standing would frustrate the statute's purpose of creating an efficient means by which a governing board may release a restriction because a judicial floodgate would be opened, permitting endless claims. The defendant argues that this court should prevent allowing either a donor or a donor's heirs to bring a suit based on private, possibly greedy, interests that would thwart the public interest of enjoying the charitable gift. If standing were found, the defendant argues that donors or their heirs would bring actions to regain the gift for their own personal benefit.

Our issue is narrow and does not involve a donor's heirs' statutory standing to bring suit, nor does it involve a return of the gift to the plaintiff.[7] See *Connecticut Bank & Trust Co.* v. *Coles*, supra, 150 Conn. 577–78; *Healy* v. *Loomis Institute*, supra, 102 Conn. 422.

" 'Standing requires no more than a colorable claim of injury; a plaintiff ordinarily establishes his standing by *allegations* of injury. Similarly, standing exists to

---

[7] Although the plaintiff has included in its claims for relief, reversion of the funds to another foundation, which relief may be improper, its other claims for relief are within the zones that it may prove are protected by CUMIFA.

attempt to vindicate "arguably" protected interests.' " (Emphasis in original.) *Presidential Capitol Corp.* v. *Reale*, 231 Conn. 500, 505, 652 A.2d 489 (1994), quoting *Maloney* v. *Pac*, 183 Conn. 313, 321 n.6, 439 A.2d 349 (1981).

It would be anomalous for a statute to provide for written consent by a donor to change a restriction and then deny that donor access to the courts to complain of a change without such consent. See *Buchholz's Appeal from Probate*, supra, 9 Conn. App. 423. The need for justiciability and controversy in order to establish standing are met when a plaintiff makes a colorable claim that he has suffered or is likely to suffer harm. *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, 236 Conn. 453, 463–64, 673 A.2d 484 (1996); *Bombero* v. *Planning & Zoning Commission*, 40 Conn. App. 75, 84, 669 A.2d 598 (1996). The allegations of the plaintiff's complaint demonstrate that there has likely been an invasion of a statutorily protected interest, that there is a causal connection between the defendant's conduct and the plaintiff's alleged injury, and that a court can redress the injury. A motion to dismiss should not be granted unless it is undisputed that the reasons to support the plaintiff's claim for relief do not exist. *Baskin's Appeal from Probate*, 194 Conn. 635, 641 n.9, 484 A.2d 934 (1984).

The judgment is reversed and the case is remanded with direction to restore this case to the docket.

In this opinion the other judges concurred.