[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE: MOTION TO DISMISS
Facts: . . . [The defendant] testified that her relationship with the plaintiff commenced in 1978 and continued until 1994. Ms. Tunick also testified that she continued to see the plaintiff against her wishes, until she sought and obtained a restraining order in August of 1995, prohibiting the plaintiff from any contact with her or the minor child. She indicated that she was aware early in the relationship with the plaintiff that he was incapable of inseminating her. She testified that she went to the doctor with the plaintiff to consult with respect to his medical issues surrounding procreation. She complained that the relationship was on-again, off-again, and that she removed herself from their home at one point for a period of five months. . . .
Ms. Tunick claimed that her parents supported the child and her, but that the plaintiff paid the mortgage, taxes, and homeowners' insurance on their jointly-held home. She conceded that he had purchased formula for the child on occasion, but so had her family. She testified that he purchased his own food, and paid his own expenses of life, but that she paid all of the medical expenses of her insemination, carrying the child, the birth of the child, and all medical expenses for the child since the date of the child's birth. The baby nurse and the cost of education have been born exclusively by the defendant. . . .
The parties purchased a home on Long Ridge Road in Stamford, CT Page 2336 and that home is owned jointly by the parties and is the subject of a partition action which is consolidated with this action for visitation. The plaintiff testified that he put one hundred and sixty thousand dollars ($160,000) into the home, and the defendant invested forty thousand dollars ($40,000), which was contributed by her father. On cross examination, the question of who contributed how much to the jointly owned home was disputed and left open ended. The plaintiff testified that he paid the mortgage, taxes, insurance, landscaping and that the defendant was in charge of fixing the home, and furnishing it. . . .
During the first four years of David's life, the plaintiff asserted that he paid all of the bills of their household. He testified that he even paid for the telephone in the defendant's Range Rover and contributed $14,000 to the purchase of said vehicle. The families continued to share holidays, and exchanged "mountains of gifts." He testified that the defendant liked to buy and give gifts, and that process involved all of the family members and especially the children in Ms. Tunick's family, who he named. . . .
The plaintiff recently became a United States citizen, and denied that he had ever threatened to take David to Cyprus to stay. He admitted that he told the child that they would visit his parents in Cyprus, along with his brother and his children. . . .
The plaintiff admitted in his testimony that he had forged the defendant's name on a mortgage which encumbered the residence shared by the parties prior to their separation. The mortgage postdated the defendant's removal of herself, her possessions, and the child, from that home. On redirect, the plaintiff testified that the mortgage was released.
The plaintiff admitted that he had signed a verified complaint in his petition for habeas corpus relief in August of 1995, which petition sought custody of the child.
The plaintiff testified that when he said "you get more flies with honey" on the answering machine tape he meant that kindness would more likely get a result, and that he did not mean it as a threat. He testified that he never went to Ms. Tunick's home in Greenwich without her permission. On cross-examination, he claimed that he did not call her to upset her. The testimony on this issue from the plaintiff was not very credible. CT Page 2337
On rebuttal, the defendant . . . denied that the plaintiff had ever spent an overnight with her after she had moved with the child to Greenwich. She claimed that she never invited him to visit. The testimony seems to conflict with the Christmas 1994 videotape, where the parties celebrated together and the photographs of the parties at Ms. Gabbai's [the plaintiff's friend] tag sale one month prior to the restraining order. . . .
Discussion: . . . The defendant argues that the plaintiff lacks standing to seek visitation with the minor child pursuant to General Statutes § 46b-59. [Footnote omitted.] The defendant relies upon the recent holding of the Supreme Court in Castagnov. Wholean, 239 Conn. 336, ___ A.2d ___ (1996).
"Standing focuses on whether a party is the proper party to request adjudication of the issues, rather than on the substantive rights of the aggrieved parties. (internal quotation marks omitted.) Herzog Foundation, Inc. v. University ofBridgeport, 41 Conn. App. 790, 793, 677 A.2d 1378 (1996).". . .
In Castagno v. Wholean, supra, 239 Conn. 337, the sole issue was "whether, pursuant to General Statutes § 46b-59, the trial court had subject matter jurisdiction to entertain a petition by grandparents for visitation rights with their minor grandchildren when the grandchildren and their parents were not involved in any case or controversy currently before the court and there was no claim that the family unit was no longer intact." Id. The court concluded "that although § 46b-59
lacks specific language imposing any threshold requirement, established rules of statutory construction, the context of the statute and its legislative history support the incorporation of a requirement that plaintiffs must demonstrate disruption of the family sufficient to justify state intervention. In the absence of any attempt . . . to satisfy this threshold requirement, [the court] conclude[d] that the trial court lacked jurisdiction to decide the issue of visitation and, therefore, properly dismissed the plaintiffs' action." Id. 337-38. Accordingly, the judgment of the trial court was affirmed. Id.
The Castagno court concluded "that the legislature intended § 46b-59 to afford the trial court jurisdiction to entertain a petition for visitation only when the minor child's family life has been disrupted in a manner analogous to the situations addressed by §§ 46b-567 and 46b-57. [Footnote omitted.] At CT Page 2338 this time we need not state precisely which circumstances will suffice to invoke the trial court's jurisdiction under § 46b-59. Although the death of a parent or the de facto separation of the parents may allow an action, there may be other times when an action is also warranted, such as when there has been a good faith allegation by a third party of abuse or neglect." (Footnotes added). Id., 352. The Supreme Court did not attempt to enumerate and specifically identify all the triggering events or circumstances that may justify state intervention. The Castagno
decision illustrates the Supreme Court's concern that state intervention in a parent's determination of how to rear a child, a constitutionally protected liberty interest, must be justified by a triggering event. This triggering or threshold event must be more than a claim that a third party's visitation is in the child's best interest.
The Supreme Court also recognized, albeit in dicta, that the contours of "`family' are so fluid as to create myriad factual circumstances" to which the statute may apply. Castagno v.Wholean, supra, 239 Conn. 352 n. 15. The definition of family has been, in other contexts, recognized as evolving and changing. As the court explained in Michaud v. Wawruck, 209 Conn. 407, 415,551 A.2d 783 (1988), "[t]raditional models of the nuclear family have come in recent years, to be replaced by various configurations of parents stepparents, adoptive parents and grandparents. We are not prepared to assume that the welfare of children is best served by a narrow definition of those whom we permit to manifest their deep concern for a child's growth and development." Id. "When a non-traditional relationship is dissolving, the child is as likely to become a victim of turmoil and adult hostility as is a child subject to the dissolution of a marriage." In Re Custody of H.S.H.-K, 533 N.W.2d 419, 421 (Wis. 1995), cert. denied 116 S.Ct. 475 (1995) (held that if a petitioner proves parent-like relationship and significant triggering event justifying state intervention in the relationship between parent and child, court may determine whether visitation is in child's best interest even where former lesbian partner did not meet requirements of visitation statute).
In Castagno v. Wholean, supra, 239 Conn. 336, the family at issue was a traditional intact nuclear family consisting of mother, father and children and the grandparents of the defendants' minor children were seeking visitation. Factually,Castagno is completely distinguishable from the case before this court. Instead, before this court, is a man who, in a legal CT Page 2339 sense, is a stranger to the child. Rather, he is an "interested" third party. "Section 46b-59 is a third party visitation statute that can be invoked by persons who do not share a blood or legal relationship with a child." In re Jennifer P., 17 Conn. App. 427,429, 553 A.2d 196, cert. denied, 211 Conn. 801, 559 A.2d 1136
(1989). The plaintiff is not the child's biological father. He is not the child's adoptive father. He is not the child's stepfather nor is he the child's foster parent. Mr. Paraskevas never married the child's mother. The plaintiff is, however, a man who cohabitated with and cared for the child's mother and child for almost four years of the child's life. Cohabitation with the minor child's mother spanned almost seventeen years.
The language of Castagno cited above, i.e., that disruption of the child's family as a threshold requirement to bringing a visitation action includes a parent's death, the parents de facto separation, or some similar circumstances, leads this court to find that the Supreme Court did not attempt to limit state intervention in all cases but instead refused to allow state intervention in "intact families". Furthermore, pursuant to General Statutes § 46b-15, [Footnote omitted.] the defendant in this action sought and obtained a restraining order in August of 1995, prohibiting the plaintiff from any contact with her or the minor child. That restraining order is in effect to this day. This court is of the opinion that such action by the defendant constitutes invocation of state intervention in the form of a judicial order. Thus, the defendant's argument regarding state intervention, as based on Castagno, cannot prevail.
The defendant argues that the holding of Castagno v. Wholean,
supra, 239 Conn. 336 was "that where an application is made for visitation pursuant to Section 46b-59, . . . the plaintiff must demonstrate in fact specific pleadings disruption of the family sufficient to justify state intervention." (Defendant's Memorandum in Support of Motion to Dismiss dated November 27, 1997.) The defendant relies on the following language fromCastagno v. Wholean, supra, 239 Conn. 342-3, in support of this argument: "All families may have, at one time or another, unhappy conflicts and disputes among adult relatives that might result in an absence of contact between those adults and their minor relatives — be they grandchildren, nieces or nephews, cousins, etc. — but longstanding tradition holds that, absent compellingcircumstances justifying some state intervention in the form of ajudicial order, the parents' decision, whether wise or not,prevails." (Emphasis added.) Id. The court agrees that a CT Page 2340 plaintiff seeking visitation must plead facts that demonstrate disruption of the family but disagrees with the defendant's contention that this was the "holding" of Castagno. In any case, the court finds that the plaintiff has pled facts sufficient to show disruption of the family. The complaint alleges that the plaintiff and defendant lived together without being married for approximately seventeen years and that the plaintiff provided a home and support for the minor child of the defendant who was born April 13, 1990 for approximately four years. (Complaint 1, 3, 4 and 6.) The complaint further alleges that both parties to this action shared parental responsibilities of the child during this four year period and that the child developed a close, caring and loving relationship with the plaintiff. (Id. 7.) Additionally the complaint alleges that the parties separated on February 4, 1995, and that the plaintiff visited the child at the defendant's new home on an almost daily basis until August of 1995. (Id. 9 and 11.) On August 8, 1995, the defendant sought and obtained an ex parte restraining order prohibiting the plaintiff from any contact with the defendant or the minor child of the defendant. (Id. 14.) This restraining order is still in effect. (Id. 16.) It is the opinion of this court that the allegations of the complaint demonstrate, in a fact specific manner, the disruption of this nontraditional family.
At oral argument, counsel for the defendant presented the court with a South Dakota Supreme court case that is factually similar to the case presently before this court. In Cooper v.Merkel, 470 N.W.2d 253 (S.D. 1991), the defendant, sought visitation with the plaintiff's son after the plaintiff sought and obtained a restraining order restraining the defendant from committing any acts of domestic abuse against the plaintiff. Id., 254. In Cooper v. Merkel, supra, as in the case before this court, the person seeking visitation was a "nonparent". Id. The trial court held that "at common law a nonparent had no legal right to visitation with a minor child and in the absence of any statute, it lacked authority to order nonparent visitation." Id. The Supreme Court of South Dakota upheld the trial court's decision dismissing the defendant's motion for visitation. Id., 256. The defendant argues that this court should follow Cooper
and find that a parent's right to custody should only be disturbed in favor of a nonparent in cases of "gross misconduct or unfitness, or [i]f other extraordinary circumstances affecting the welfare of the child" is clearly shown. Id., 255. The defendant argues that the gross misconduct, unfitness or other extraordinary circumstances are the types of "compelling CT Page 2341 circumstances" that must be present under Castagno.[10] The defendant argued that allowing an ex-boyfriend, such as the plaintiff, to have standing will open the floodgates the Castagno
court attempted to shut.
First, the court notes that the South Dakota statute at issue did not expand visitation rights "other than to extend such rights to grandparents if in the best interest of the child. SDCL 25-452." Cooper v. Merkel, supra, 470 N.W.2d 255 n. 2. Second, theCastagno court did not specifically define what it meant by "compelling circumstances" but the entire discussion of the Supreme Court indicates to this court that what is meant by "compelling circumstances" is disruption of the family unit or possibly neglect or abuse situations. In terms of the disruption of the family unit threshold requirement as set forth inCastagno, supra, this court is confronted with a situation where the parties never legally sanctioned their relationship. As discussed above, however, this does not mean that they were not a "family" and that the defendant's move from the home was any less a de facto separation than it would have been had the parties been married. The plaintiff had a long time relationship with the defendant (17 years). He gave the minor child emotional and financial support during the three years and ten months that they all live together and visited the child on an almost daily basis for over one year following his separation from the defendant. From the testimony and evidence, the court further finds that the minor child often referred to Mr. Paraskevas as "daddy" until he was instructed by his mother not to do so. Accordingly, in light of the evidence and this court's conclusion that this case is in keeping with the requirements set forth in Castagno v. Wholean,
supra, 239 Conn. 336 (1996), the court further concludes that the plaintiff has standing.
In summary, although this court recognizes and is bound by the Supreme Court's decision to limit the circumstances under which the jurisdiction of the court may be invoked under General Statutes § 46b-59, it finds that the Castagno case does not apply to the facts presently before it. Unlike Castagno, this court is faced with a "nontraditional" family which has separated. Applying the holding of Castagno to the facts, the court finds that the parties before it constituted a "nontraditional" family and the separation of the parties is tantamount to a "de facto" separation. Additionally, the obtaining of the restraining order has already invoked the power of the court to intercede in this family and cannot now be said CT Page 2342 to be meaningless when it comes to invoking the power of the state. Thus, even under Castagno, the plaintiff has standing. For the foregoing reasons the motion to dismiss is denied.
DRANGINIS, J.