[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS (#105)
This matter involves the suit on a purchase and sales agreement for a used airplane.
Pursuant to Practice Book § 10-31, the defendant has filed a motion to dismiss asserting that Connecticut lacks jurisdiction over it. For the reasons stated hereinafter, the motion to dismiss is granted.
"A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts." Carl J. Herzog Foundation, Inc. v. Universityof Bridgeport, 41 Conn. App. 790, 793, 677 A.2d 1378 (1996), rev'd on other grounds, 243 Conn. 1, 699 A.2d 995 (1997). "A ruling on a motion to dismiss is neither a ruling on the merits of the action . . . nor a test of whether the complaint states a cause of action . . . . Motions to dismiss are granted solely on jurisdictional grounds." (Citations omitted.) Discover Leasing, Inc. v. Murphy, 33 Conn. App. 303, 306-307,635 A.2d 843 (1993).
The defendant, Atlanta Jet, Inc. is a Georgia corporation. The defendant has offices in Georgia and Florida. The evidence suggests that they also have a place of business in West Virginia and Pennsylvania. The agreement provided that the airplane was to be delivered to the plaintiff in Delaware. The defendant has not had a sales office in Connecticut since 1997. Since then, it has not transacted business in Connecticut, maintained agents in Connecticut nor delivered any aircraft in CT Page 12496 Connecticut. It had left over stationery with the Connecticut address that it used until it was depleted, which period included during the time of the making of the contract at dispute between the parties.
The defendant advertises in magazines with worldwide circulation, and, on the Internet; some of the recipients of that general advertisement in print and in cyberspace are in Connecticut. The defendant, on May 10, 1999 through a purchasing agent, sent a letter to "Mr. William C. Longa Liberty Transportation, LLC" in Connecticut, soliciting the purchase of a airplane owned by the plaintiff. It also invited Longa to visit the defendant's web site on the Internet.
The plaintiff, Liberty Aircraft LLC is a Delaware limited liability company.
The contract between the parties was entered into in March, 1999, with two addenda modifying it, one made in March and one in April, 1999. The aircraft purchase agreement was signed by the plaintiff as purchaser by William C. Longa, "atty for Liberty Aircraft, LLC", with an address for Liberty in Coral Springs, Florida. Longa is an attorney with his office in Woodbridge, Connecticut. He signed the agreement in his office in Connecticut. The agreement indicates that the seller accepted it at its Georgia address on March 27, 1999. The addenda bear Longa's signature for the purchaser as well; they were signed by him in Connecticut.
The escrow agent's acknowledgment of the deposit paid for the airplane was sent to plaintiff at Longa's address in Connecticut. Longa sent a letter from Connecticut as attorney for plaintiff authorizing the release of the funds to the defendant. Longa is general counsel for the plaintiff and, as phrased in his affidavit before the court, "a manager" of the plaintiff. He utilized his Connecticut office in all of his mail, telephone and facsimile work regarding the contract subject of this litigation.
The agreement contains the following provision: "Applicable Law: For purposes of interpreting or enforcing any of the provisions of the Agreement, Seller submits to the jurisdiction of the Superior Court of Gwinnett County, Georgia. This Agreement shall be construed and interpreted under the laws of the State of Georgia."
The airplane was to be delivered by the defendant to the plaintiff in Delaware.
The defendant asserts that Connecticut lacks personal jurisdiction over it. It claims: (1) that the parties have submitted to Georgia's jurisdiction for any litigation, (2) Connecticut lacks jurisdiction over CT Page 12497 it pursuant to General Statutes § 33-929 (t), and (3) it does not have sufficient minimum contacts with the State of Connecticut to satisfy due process requirements.
The plaintiff asserts that only the defendant has submitted to Georgia jurisdiction, not itself, and that through Connecticut's long arm statute, our courts have jurisdiction over the defendant. Finally, plaintiff asserts that the defendant has sufficient contacts with the State of Connecticut to satisfy due process considerations.
The court's inquiry must first begin with the long arm statute. "Our analysis of the competing claims of the parties cannot, however, begin with the due process clause. Our first inquiry must be whether our long-arm statute authorizes the exercise of jurisdiction under the particular facts of this case. Only if we find the statute to be applicable do we reach the question whether it would offend due process to assert jurisdiction. [citations omitted.] We note, additionally, that in the establishment of facts pertaining to personal jurisdiction, it is the plaintiff who bears the burden of proof." Lombard Bros., Inc. v. GeneralAsset Management Co., 190 Conn. 245, 250 (1983).
 Connecticut Long Arm Statute
The plaintiff claims that the Connecticut Long Arm Statute, General Statutes § 33-929 (t)(1) and (2),[1] extends jurisdiction of the courts of Connecticut over the defendant, asserting that the contract was formed in the state, and it solicited business in the state through the mails or otherwise. Those asserted by the plaintiff shall be considered sequentially.
A. Contract formation or performance
The plaintiff claims jurisdiction is achieved in this matter because the underlying contract was formed in the State of Connecticut. The contract was signed by the plaintiff's attorney, on behalf of it, in the State of Connecticut. The address utilized however by the plaintiff in signing the contract was in Florida. The contract was signed by a representative of the defendant in the state of Florida after the plaintiff's attorney signed it. The seminal case construing the language of the statute that preceded General Statutes § 33-929 (f)(1) determined that the place that the contract is made is where the final signature is placed on the contract. It is the acceptance of an offer made. "The unqualified right of the [party challenging jurisdiction] to reject the contract prevented any legal right arising under it while it remained executory. [citations omitted.] Consequently New York was the place where the last thing had to be done in order to make the agreement CT Page 12498 between the parties effective. The place of contract was New York. Restatement, Contracts, Vol. 1, § 74, and Connecticut Annot.; Restatement, Conflict of Laws, §§ 326, 331; Eager Go. v. Burke,74 Conn. 534, 536, 51 A. 544; Johnson County Savings Bank v. Walker,80 Conn. 509, 511, 69 A. 15; Loveland v. Dinnan, 81 Conn. 111, 114,70 A. 634; Supreme Colony v. Towne, 87 Conn. 644, 646, 89 A. 264." AlfredM. Best Co., Inc. v. Goldstein, 124 Conn. 597, 602-3 (1938). Similarly, here, the defendant had the right to reject the terms of the agreement bearing the signature of plaintiff's attorney. That which made it a contract effective between the parties was the signing by defendant's representative. That act was done in Georgia. Therefore, the place of contract was Georgia, not Connecticut. Further, in the language of the agreement itself, signed by plaintiff, through its counsel, the parties stipulate that Georgia is where the agreement is deemed to have been made. There were addendum executed to the original agreement. None of the addendum modified this provision of the agreement. The plaintiff has not proved that they were executed in a manner different from the original agreement.
The plaintiff has failed to sustain its burden of proof that Connecticut has in personam jurisdiction over the defendant under the provisions of General Statutes § 33-929 (f)(1).
B. Business solicitation by mail or otherwise
The plaintiff asserts that Connecticut has jurisdiction over the defendant because its business practices bring it within the language of General Statutes § 33-929 (f)(2) which provides that a foreign corporation is subject to suit in Connecticut: "on any cause of action arising as follows: . . . (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state . . . ." The business solicitation by the defendant that the plaintiff points to is its advertisements in magazines that are worldwide and sold in Connecticut, its advertisements on the Internet, via the world wide web, that are accessible in Connecticut, and a letter to plaintiff soliciting interest in selling an airplane to defendant that was mailed in May, 1999.
The magazines that were submitted to the court are excerpts from A/CFlyer, The Best Read Resale Magazine Worldwide from May, June, July, August, September, October, November, December, 1999, January and February, 2000, and World Aircraft Sales, The Leading Source forAirplanes and Helicopters Worldwide, from May, June, July, August, October, November, December, 1999, and February, 2000. The world wide web advertisement was a listing under dealer/Broker Directory of CT Page 12499 aircraftbuyer.com, and, the Atlanta Jet, Incorporated home page which can be found on the web at www.atlantajet.com/main.htm, which shows a copyright of 1997, 1998, 1999 and, multiple page listings of aircraft inventory of aircraft for sale, at www.aviation-sales.com, which appears to be a web site of the defendant, which was printed off the site on February 23, 2000. The letter from a purchasing agent of the defendant addressed to the plaintiff is dated May, 10, 1999 and offers to discuss the defendant's purchase of a specific aircraft from plaintiff.
An examination of the documents submitted discloses that none of the magazine advertisements or internet advertisements or web pages targeted people in Connecticut; instead, they were for a worldwide audience which included people in Connecticut, and every other domestic and foreign jurisdiction.
"For purposes of § 33-411(c)(2), a plaintiff's "cause of action aris[es] . . . out of . . . business solicited in this state" if, at the time the defendant engaged in solicitation in Connecticut, it was reasonably foreseeable that, as a result of that solicitation, the defendant could be sued in Connecticut by a solicited person on a cause of action similar to that now being brought by the plaintiffs. Pursuant to our interpretation of the statute, a plaintiff need not show that, because of the acts of solicitation, the defendant was on notice that it might be sued by the plaintiff himself or herself. A plaintiff similarly need not show that the defendant solicited his or her business in Connecticut. A plaintiff need only demonstrate that the defendant could reasonably have anticipated being haled into court here by some person who had been solicited in Connecticut and that the plaintiff's cause of action is not materially different from an action that might have resulted directly from that solicitation." Thomason v. Chemical Bank,234 Conn. 281, 296, 661 A.2d 595 (1995).
Nothing in the advertisements at issue here specifically targeted Connecticut residents for solicitation, nor offered any special service, product, pricing or other advantage to Connecticut residents. Instead they were advertisements targeting the entire world community (or at least that portion of the world community interested in resale aircraft.).[2]
Nothing in those advertisements would have led the defendant to believe it could be haled into court in Connecticut. Fundamental notions of fairness lead the court to conclude that the defendant did not intend to subject itself to every jurisdiction in which its general advertisement reached. Further, it is to be emphasized that the advertisements offered nothing to entities in Connecticut that was not generally available to all, everywhere. Finally, when the defendant contracted with the plaintiff, it contracted with a Delaware corporation, that listed a place of business in Florida, that sought delivery of the product in Delaware. CT Page 12500 The only Connecticut contact was the plaintiff's utilization of a Connecticut attorney. That the attorney, in his affidavit, also called his law office a place of business of the plaintiff is of no help to plaintiff's cause. This assertion had no specifics tying it in any way to either defendant's advertisements or this transaction to make it meaningful under an analysis of the facts for determination of the applicability of this provision of the long-arm statute.
It is also meaningful that the evidence produced by the plaintiff regarding advertisements postdates the transaction. It is a chronological impossibility therefore to find that the cause of action at issue here arose out of the defendant's magazine and Internet solicitations.
The correspondence of May, 1999 from a purchasing agent of the defendant to the plaintiff, similarly, does not bring the defendant within the scope of this statutory provision. It is not a repeated solicitation, it postdates the cause of action's genesis and origin, and it is for a purchase and not a sale by the defendant, so it can not be said to have resulted in the cause of action at issue, certainly not within the meaning of the Thomason v. Chemical Bank criteria.
The court finds that the plaintiff has failed to meet its burden of proof of in personam jurisdiction over the defendant. Therefore, the court need not go on to consider whether fundamental notions of due process have been satisfied under the "minimum contacts' analysis, or, the defendant's claim of forum non conveniens.
The motion to dismiss is granted. So ordered.
By the court,
Munro, J.